# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEANNA M. TWEEDY, | ) 1:09-CV-00548-GSA |
| | ) |
| | ) |
| | ) ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) SOCIAL SECURITY COMPLAINT |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## BACKGROUND

Plaintiff Deanna M. Tweedy ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

//

//

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 5 & 19.

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed her application on or about November 17, 2006, alleging disability beginning December 1, 2004.  AR 71-73.  Her application was denied initially on February 1, 2007 (AR 47-50), and upon reconsideration on April 16, 2007.  AR 52-56.  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 59.  ALJ William C. Thompson, Jr. held a hearing on November 20, 2007 (AR 28-44) and issued an order denying benefits on May 22, 2008.  AR 7-18.  Plaintiff requested a review of the hearing (AR 5) and the Appeals Council denied review.  AR 1-3.

### Hearing Testimony

ALJ Thompson held a hearing on November 20, 2007, in Stockton, California.  Plaintiff appeared and testified.  She was represented by attorney Ben Kuykendall.  Vocational Expert ("VE") David M. Dettmer also testified.  AR 28-44.

Plaintiff was born on September 21, 1957.  AR 33.  She was 50 years old on the date of the hearing.  AR 32.  She is five feet, eight inches tall, weighs 185 pounds, and is right handed.  AR 33.  She completed twelfth grade.  *Id*.  She lives in a house with her husband and 16-year old daughter.  AR 33, 38.  Their income consists of her husband's Social Security disability insurance benefits and his other disability benefits.  AR 33.

When asked about the last time she worked, Plaintiff stated it was probably 2002 or 2003.  AR 34.  The last job she had was as a substitute teacher's aide for a grammar school.  *Id*.  She worked there part-time for five years, "off and on."  *Id*.  She typically worked four hours per day, three to five days per week.  *Id*.  She filled in for an employee on medical leave and other employees on vacation or taking time off.  *Id*.  The work consisted of copying papers for teachers and working with the children "once in a while."  AR 35.  She was laid off because the employee she filled in for returned from chemotherapy.  *Id*.  She also cleaned hospital rooms from 1974 to 1990.  *Id*.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

1    Plaintiff cannot work because of arthritis in both hands.  AR 35.  She sees Dr. Anderson

2  for treatment for arthritis every two months.  *Id*.  She takes Tylenol Arthritis, but no prescription

3  medications because she also has gastroesophageal reflux disease (GERD).  AR 35, 39.  She also

4  has pain in her neck, lower back, and hips, for which she takes half of a Vicodin in the morning

5  and half at night.  AR 35-36.  She has been seeing Dr. Duclair for treatment every four months

6  for almost one year, but the pain has been present for 20 years.  AR 36.  According to Dr.

7  Duclair, surgery is not an option.  *Id*.  She has had injections in her neck and back, which helped

8  with the pain for about one week.  AR 36-37.  She tried physical therapy for two days, but "it

9  hurt so much that [she couldn't] do it."  AR 37.  She was "sick for the next three days."  *Id*.

10    A diagnosis of GERD was made in 2000.  AR 37.  Dr. Anderson has been treating her

11  every two months and prescribing Aciphex.  *Id*.  The GERD bothers her every day, three to four

12  times per day, especially in the mornings.  *Id*.  She gets a "burning, nauseous feeling" and has to

13  stop everything and lay down.  AR 37-38.  She went to the hospital for it in 2002.  AR 38.  She

14  has to restrict her diet and avoid certain foods.  *Id*.

15    Plaintiff tries to clean her house, but she has to stop after a short time because her hand

16  hurts.  AR 38.  She does dishes because the hot water relaxes her hands.  *Id*.  Her daughter does a

17  lot of the cleaning.  *Id*.  During the day, Plaintiff reads and walks around outside.  AR 39.  She

18  can walk about 500 yards before she has to stop because of pain in her lower back and hips.  *Id*.

19  She does not need a cane or crutch.  *Id*.  She can stand for 10 to 15 minutes before her back starts

20  hurting.  *Id*.  She sometimes has difficulty sitting because of her lower back and hip.  *Id*.  She can

21  take care of her personal hygiene.  *Id*.  She goes grocery shopping, but she takes her daughter

22  with her.  AR 40.  Her daughter usually drives because she does not like to drive and because of

23  the price of gas.  *Id*.

24    VE Dettmer testified that Plaintiff's previous work as a part-time teacher's aide is

25  considered light work and her previous work as a hospital housekeeper is considered medium

26  work.  AR 41.  He was asked to consider a hypothetical worker of Plaintiff's age, education, and

27  work experience, who is capable of lifting 10 pounds frequently, can stand and walk in

28  combination for at least six hours in a workday, and can sit without limit when not required to

stand or walk.  *Id*.  This individual can occasionally bend, stoop, twist, squat, kneel, crawl, and climb stairs, but cannot climb ladders or scaffolding and would be limited bilaterally to only occasional overhead reaching.  *Id*.  VE Dettmer indicated that these limitations do not appear to preclude Plaintiff's work as a teacher's aide.  *Id*.  Furthermore, he indicated that an individual with these limitations could also perform light work such as office helper and cashier, with 16,000 and 110,000 jobs in California, respectively.  Id.  The number of cashier jobs would be subject to a 25 percent erosion due to lifting and overhead reaching.  AR 41-42.  VE Dettmer indicated that sedentary work is also available for this individual.  AR 42.  An example is small parts assembly, with 17,000 jobs in California.  AR 42.

VE Dettmer was asked to consider a second hypothetical worker, as posed by Plaintiff's counsel, of Plaintiff's age, education, and work experience, who could occasionally lift and carry ten pounds, could sit for a total of one hour per day, and could stand or walk less than one hour per day.  This individual could occasionally handle, but could never climb, balance, stoop, crouch, kneel or crawl, and should never reach, push, or pull.  AR 42-43.  VE Dettmer indicated that this hypothetical worker could not do Plaintiff's job as a teacher's aide and could not do any jobs he previously identified.  AR 43.

**Medical Record**

The entire medical record was reviewed by the Court.  Summaries of the reports and treatment notes are provided below.

***Danny M. Anderson, M.D.***

On August 20, 2004, Plaintiff was seen by her treating physician, Danny M. Anderson, M.D., for complaints of swollen, stiff, and painful finger joints, painful ankle and toe joints, low back pain, and irritable bowel syndrome.  AR 186.

On February 4, 2005, Plaintiff was seen for complaints of left ear pain and a white coating on her tongue.  AR 184.  Treatment notes indicate a diagnosis of degenerative disc disease (DDD)/degenerative joint disease (DJD) of the thoracic spine.  *Id*.

On March 2, 2005, Plaintiff was seen for complaints of chronic gastric problems.  AR 183.

On August 12, 2005, Plaintiff was seen for complaints of GERD, right elbow pain, and right shoulder pain.  AR 179.

On September 29, 2005, Plaintiff was seen for complaints of mid-back pain and sciatic pain.  AR 177.

On January 5, 2006, Plaintiff was seen for complaints of GERD, herniated disc, and pain in her hands and right shoulder.  AR 171.  The pain increased with extension and range of motion.  *Id*.  The Dr. Anderson's diagnosis included DJD of the hand, DDD of the lumbar spine, and chronic GERD.  *Id*.

On November 9, 2006, treatment notes indicated increased DJD of the hand, GERD, and hip pain when walking one half mile.  AR 166.

On May 31, 2007, Dr. Anderson prepared a complete medical report of Plaintiff's physical and mental work-related impairments.  AR 200-204.  His diagnoses included DDD/DJD and arthritis.  This diagnosis was based on an epidurography done on January 5, 2007, and March, 30, 2007, with Dr. Duclaire,[3] a bilateral hip x-ray done on November 14, 2006, MRIs done on December 19, 2006 and February 26, 2007, and x-rays of the thoracic spine done on September 8, 1997[4] and March 3, 2005.  AR 200.  Plaintiff was being treated with Norco.  *Id*.  Past treatments included anti-inflammatories and epidural blocks done in January 2007 and on April 29, 2007.  *Id*.  Physical therapy and chiropractic treatment had been done in the "distant past."  *Id*.  Dr. Anderson noted that Plaintiff's response to the treatment was "temporary" and that her prognosis was "guarded."  *Id*.

Dr. Anderson opined that Plaintiff could occasionally lift and carry up to ten pounds, could sit for one hour total in an eight hour work day, and could not stand or walk for any length of time.  AR 201.  She could occasionally use her hands for simple grasping and fine manipulation, could occasionally use her feet, but could never climb, balance, stoop, crouch,

---

[3] The Court notes the medical record contains no treatment notes from Dr. Duclaire on January 5, 2007, and March 30, 2007.

[4] The Court notes the medical record contains no x-ray of the thoracic spine performed on September 8, 1997.

kneel, or crawl.  AR 202.  She could frequently feel and occasionally handle, but never reach, push, or pull.  *Id.*  He cited an "abnormal MRI" as the medical finding that supports all of these limitations.  AR 201-202.

Dr. Anderson further opined that Plaintiff must avoid all exposure to heights, moving machinery, vibrations, noise, dust, fumes, odors, smoke, chemicals, wetness, dryness, and temperature extremes, but he did not identify any medical/clinical findings that support this assessment.  AR 203.  He indicated that the earliest date that this physical assessment accurately described Plaintiff's work-related limitations was December, 2006.  *Id.*

In an assessment of Plaintiff's mental ability to do work-related activities, Dr. Anderson indicated that Plaintiff's abilities to follow work rules, relate to co-workers, use judgment, function independently, interact with supervisors, as well as maintain attention and concentration were fair or better.  AR 203.  Her abilities to deal with the public and with work stress were poor. *Id.*  Her abilities to make performance adjustments and personal/social adjustments were fair or better.  AR 204.  Dr. Anderson indicated that the earliest date that this mental assessment accurately described Plaintiff's work-related limitations was December, 2006.  *Id.*

### Miguel Hernandez, M.D.

On January 17, 2007, family practitioner Miguel Hernandez, M.D., at MDSI Physician Services, performed a comprehensive internal medicine evaluation.  AR 125-128.  Plaintiff's chief complaints were arthritis of the hands and GERD.  AR 125.  Dr. Hernandez reviewed Plaintiff's medical records and noted that a x-ray of the bilateral hips on November 14, 2004, was negative.  *Id.*  He further noted that a x-ray of the thoracic spine on March 4, 2005, showed mild thoracic scoliosis and diffuse degenerative changes, but was otherwise unremarkable.  *Id.*

Dr. Hernandez noted that Plaintiff's arthritis had been diagnosed two years ago, with no specific injuries and no surgeries to her hands.  AR 125.  She was taking over-the-counter Tylenol because other medications "hurt her stomach."  *Id.*  Plaintiff had GERD for four years, and was prescribed Aciphex to suppress the symptoms.  *Id.*  Plaintiff stated that she could not hold heavy objects with her hands due to pain, could not open jars, and dropped things easily.  *Id.* She could not hold spoons, glasses, or vacuum because she was unable to hold the vacuum

cleaner. *Id*. She could not do house work or yard work because of her weak hand grip. AR 125-126. She could dress and bathe herself, and sitting, standing, and walking were generally not a problem. *Id*.

Dr. Hernandez noted that Plaintiff walked into the room with no discomfort and sat on the examination table with no problem. AR 126. She had no assistive device. *Id*. Examination of her hands revealed no deformities and no tenderness to palpation over the wrist or any fingers. AR 127. Her hand grip strength was good. *Id*. Dr. Hernandez diagnosed Plaintiff with generalized osteoarthritis of the hands and opined that it "appears to be clinically stable." AR 128. He also diagnosed GERD. *Id*.

Dr. Hernandez opined that Plaintiff could stand, walk, and sit for six hours in an eight hour work day with routine breaks. AR 128. She needed no assistive device. *Id*. She could lift and carry ten pounds frequently. *Id*. Dr. Hernandez attributed manipulative limitations to reaching, handling, feeling, grasping, and fingering, especially in a repetitive manner, due to arthritis of both hands. *Id*. He found no postural or environmental limitations. *Id*.

### Cesar P. Duclair, M.D.

On December 6, 2006, Cesar P. Duclair, M.D., at the Northern California Spine Institute, performed a physical examination of Plaintiff at the request of Dr. Anderson. AR 132-133. Plaintiff complained of lower back pain, extending into her lower extremities, for more than 20 years. AR 132. She stated that the worst position for her is standing, which she can do for ten minutes at a time, and that lying down eases her pain. *Id*. She also stated that she can walk one to two city blocks. *Id*.

The examination revealed no atrophy and full range of motion in her extremities, and normal sensation and reflexes in her lower extremities. AR 132-133. Plaintiff had decreased strength secondary to pain in her lower extremities, with some mild radicular component. AR 133. Straight leg raising was slightly positive bilaterally and hyperextension of the lumbar spine was somewhat difficult. *Id*. Dr. Duclair diagnosed axial low back pain with mild radicular component, most likely facetogenic syndrome. *Id*. He prescribed Ultracet and referred Plaintiff for an MRI. *Id*.

On January 29, 2007, Plaintiff was seen by Dr. Duclair for a follow-up visit and for complaints of neck and lower back pain. AR 131. An MRI of Plaintiff's neck revealed C3-4 and C5-6 disc herniations. *Id*. The doctor opined that Plaintiff was having a "good deal of pain" from the herniations. *Id*. He also noted that the low back pain was new, and he had not encountered it before with Plaintiff. *Id*.

A physical examination revealed normal sensation and reflexes but positive straight leg raising. AR 131. The doctor indicated that the Fadir sign localizes the pain in the lower back and that Plaintiff can heel to toe walk. *Id*. The diagnosis included axial low back pain, probably disc herniation versus facet syndrome in the lower back, and cervical radiculitis. *Id*. Plaintiff refused EMG of the upper extremities, but elected to proceed with a cervical epidural. *Id*. Darvocet was prescribed and an MRI of the lumbar spine was ordered. *Id*.

On January 30, 2008, Plaintiff was seen for a follow-up visit and for complaints of neck pain. AR 220. She indicated that she could not "tolerate Norco because it makes her sick and makes her itch." *Id*. She asked about a more permanent solution. *Id*. The examination revealed arm paresthesias about the lateral upper arm. *Id*. The doctor noted that her reflexes were symmetrical and her grip was decreased at the bilateral biceps and deltoid. *Id*. He diagnosed cervical stenosis and advised a cervical transforaminal epidural. *Id*. He prescribed Neurontin for the numbness and tingling in Plaintiff's arm. *Id*.

On March 26, 2008, Plaintiff was seen for a follow-up visit and for complaints of neck pain, lower back pain, and numbness in her neck and arms. AR 219. Dr. Duclair indicated that Plaintiff had consulted with orthopedic surgeon Kevin C. Booth, but Dr. Booth advised against neck surgery. *Id*. Dr. Duclair reiterated findings of cervical stenosis secondary to disc herniation, disc herniation with foraminal narrowing in the lumbar spine, and S1 joint arthropathy. *Id*. He indicated that Plaintiff's neck improved after the injection but she still has numbness. *Id*. He opined that she may have cervical radiculopathy or possible carpal tunnel syndrome. *Id*. He recommended an EMG and a cervical collar. *Id*. Plaintiff elected to proceed with a right-sided S1 joint injection and right-sided L5-S1 transforaminal epidural injection. *Id*.

On June 19, 2008, Plaintiff was seen for a follow-up visit and for complaints of difficulty

1 walking, lifting heavy objects, and pain in her lower back and right buttock.  AR 218.  Dr.

2 Duclair discussed options for many medications, which Plaintiff declined due to gastric side

3 effects.  *Id*.  The physical examination revealed positive S1 joint tenderness, some mild straight

4 leg raising, and increase of pain with hyperextension.  *Id*.  Dr. Duclair diagnosed lumbar stenosis

5 and right-sided S1 joint arthropathy, and prescribed a Lidoderm patch.  *Id*.

6           ***Kevin C. Booth, M.D.***

7           On June 1, 2007, orthopedic surgeon Kevin C. Booth at the Northern California Spine

8 Institute performed a spine surgery consultation at the request of Dr. Duclair.  AR 205-206.

9 Plaintiff complained of neck and lumbar pain, numbness in her hands and fingers, and radiating

10 discomfort in her buttocks and thighs.  AR 205.  She was taking Aciphex, Tylenol Arthritis, and

11 estradiol.  *Id*.  Physical examination of the neck and upper spine revealed no focal motor or

12 sensory deficits, intact reflexes, and some subjective mild stocking glove numbness in the hands.

13 *Id*.  Cervical range of motion was normal.  *Id*.  There was some periscapular and trapezial

14 tenderness with palpation.  *Id*.  The examination of the lumbar spine revealed focal paraspinal

15 muscular discomfort, some lumbosacral tenderness to palpation, near normal range of motion, no

16 focal motor or sensory deficits, and a stable gait.  *Id*.

17           Dr. Booth's review of the X-rays revealed advanced age-appropriate

18 spondylosis/degeneration of the cervical and lumbar spine, without deformity.  AR 206.  Review

19 of the MRI of the cervical spine revealed a small disc protrusion that was noncompressive at C5-

20 6 and C3-4.  *Id*.  There was adequate circumferential CSF around the cord and no significant root

21 compression.  *Id*.  The doctor opined that the MRI of the lumbar spine was age-appropriate and

22 normal with no evidence of significant neurologic compression.  *Id*.  He diagnosed axial neck

23 and lumbar pain, without evidence of radicular pain, secondary to underlying degenerative

24 spondylosis.  *Id*.

25           Dr. Booth recommended a standard conservative treatment program with an emphasis on

26 functional rehabilitation and physical therapy, transitioning to a supervised self core stabilization

27 program.  AR 206.  He also recommended judicious use of medications including anti-

28 inflammatories and mild analgesics.  *Id*.  He opined that Plaintiff was unlikely to become a

9

surgical candidate due to the diffuse nature of her spondylosis, which is poorly amenable to surgical intervention. *Id*. She was referred to physical therapy. *Id*.

### *Physical RFC Assessment*

On April 16, 2007, state agency examining physician W. G. Jackson completed a Physical RFC Assessment. AR 189-194. The doctor opined that Plaintiff could lift and/or carry 25 pounds frequently and 50 pounds occasionally, could stand and/or walk for a total of about six hours in an eight-hour workday, and could sit for a total of about six hours in an eight-hour workday. AR 190. She could frequently climb, balance, stoop, kneel, crouch, and crawl, but she is limited to occasional overhead reaching. AR 192. The doctor found no limitations on pushing or pulling and no visual, communicative, or environmental limitations. AR 190, 192-193.

### *Radiology*

On March 3, 2005, radiologist James G. Rohn, Jr., M.D., at Sonora Regional Medical center, performed a radiological examination of Plaintiff's thoracic spine at the request of Dr. Anderson. AR 155. The examination revealed mild thoracic scoliosis, possibly indicative of muscular spasm, and diffuse degenerative changes. *Id*.

On December 19, 2006, Dr. Rohn performed a MRI of Plaintiff's cervical spine at the request of Dr. Duclair. AR 148-149. The MRI revealed several findings:

> 1. Anterior epidural impression upon the thecal sac at C3-4 due primarily to a subligamentous disc abnormality suggestive of a subligamentous disc protrusion or extrusion on the left. This produces flattening of the cervical cord centrally and to the left of midline and projects approximately 3 to 4 mm posterior to the vertebral body. This is accompanied by a small hypertrophic spur and there is early left C3-4 neural foraminal narrowing due to bony hypertrophy.
> 2. Left anterior epidural impression upon the thecal sac at C5-6 due primarily to a hypertrophic spur accompanied by a small disc bulge. This produces mild flattening of the cervical cord. There is right-sided neural foraminal narrowing at this level due to bony hypertrophy and probable early lateral recess stenosis.
> 3. Broad-disc bulge at C4-5 and C6-7 with disc space narrowing on the right with neural foraminal narrowing on the right at C6-7.
> 4. Findings suggestive of annular fissures at C3-4 through C5-6.
> 5. Increased lordosis of the cervical spine in the lower cervical region.

*Id*.

On February 26, 2007, Dr. Robert P. Huberman, M.D., at Sonora Regional Madical Center, performed a MRI of Plaintiff's lumbar spine at the request of Dr. Duclair. AR 138. Dr.

1  Huberman found mild degenerative disc changes and a central to left disc bulge with mild left

2  foraminal encroachment at the L4-5 level, but no evidence of spinal stenosis.  *Id*.

3        On May 30, 2008, Dr. Rohn performed a radiological examination of Plaintiff's hands at

4  the request of Dr. Anderson.  AR 208.  The examination revealed arthritic changes with joint

5  space narrowing involving the distal and proximal interphalangeal joints and arthritic changes at

6  the carpometacarpal joint and metacarpophalangeal joints of the thumb.  *Id*.  The examination

7  also revealed a small bony density adjacent to the intercarpal joint between the right lunate and

8  triquetrum.  *Id*.  Dr. Rohn noted that bony alignment and metacarpophalangeal joints appear

9  normal and that the carpus is normal in alignment.  *Id*.  He noted no definite bony erosions or

10  abnormal soft tissue calcifications.  *Id*.  He opined that there may be mild narrowing of the

11  radiocarpal joints bilaterally.  *Id*.

12        Dr. Rohn's impression was arthritic changes involving findings suggestive of

13  osteoarthritis and possible early symmetrical narrowing of the radiocarpal joints.  AR 208.  He

14  indicated that the narrowing could be associated with rheumatoid arthritis, but such a diagnosis

15  was unsupported by any other findings.  *Id*.

16  **ALJ's Findings**

17        The ALJ found that Plaintiff had not engaged in substantial gainful activity since

18  December 1, 2004, and has the severe impairments of DDD of the lumbar and cervical spines,

19  GERD, and obesity.  AR 12.  Nonetheless, the ALJ determined that the severe impairments do

20  not meet or exceed one of the listed impairments.  AR 13.

21        Based on his review of the medical evidence, the ALJ determined that Plaintiff has the

22  RFC to perform sedentary work, with the ability to: (1) lift or carry up to ten pounds frequently;

23  (2) stand or walk up to six hours in combination; (3) sit without limit; and (4) occasionally bend,

24  stoop, twist, squat, crawl, climb stairs, and reach overhead.  AR 13.   She should not climb

25  ladders or scaffolding.  AR 13.

26        The ALJ determined that Plaintiff is capable of performing past relevant work as a

27  teacher's aide, which does not require the performance of work-related activities precluded by

28

1    Plaintiff's RFC.  AR 17.  Accordingly, the ALJ found that Plaintiff was not disabled, as defined

2    in the Social Security Act.  AR 18.

3    **SCOPE OF REVIEW**

4    Congress has provided a limited scope of judicial review of the Commissioner's decision

5    to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

6    the Court must determine whether the decision of the Commissioner is supported by substantial

7    evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

8    *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

9    *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

10   reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

11   401.  The record as a whole must be considered, weighing both the evidence that supports and

12   the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

13   995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

14   apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

15   This Court must uphold the Commissioner's determination that the claimant is not disabled if the

16   Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

17   substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

18   Cir. 1987).

19   **REVIEW**

20   In order to qualify for benefits, a claimant must establish that he is unable to engage in

21   substantial gainful activity due to a medically determinable physical or mental impairment which

22   has lasted or can be expected to last for a continuous period of not less than twelve months.  42

23   U.S.C. § 1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of

24   such severity that she is not only unable to do her previous work, but cannot, considering her age,

25   education, and work experience, engage in any other kind of substantial gainful work which

26   exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

27   The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

28   Cir. 1990).

1    In an effort to achieve uniformity of decisions, the Commissioner has promulgated

2 regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

3 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).  Applying this process in this case, the ALJ found

4 that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her

5 disability; (2) has an impairment or a combination of impairments that is considered "severe"

6 based on the requirements in the Regulations (20 CFR §§ 404.1520(c)); (3) does not have an

7 impairment or combination of impairments which meets or equals one of the impairments set

8 forth in 20 CFR Part 404, Subpart P, Appendix 1; and (4) was capable of performing her past

9 relevant work as a teacher's aide.  AR 12-17.

10    Here, Plaintiff argues that (1) the ALJ failed to find her DJD of the hands to be a severe

11 impairment at step two of the sequential evaluation process; (2) the ALJ improperly rejected the

12 opinions of the treating and examining physicians regarding her manipulative limitations; and (3)

13 the ALJ failed to properly assess her RFC and question the VE.

14                                **DISCUSSION**

15    *A.    Step Two Findings*

16    Plaintiff argues that the ALJ failed to find her DJD of the hands to be a severe

17 impairment at step two of the sequential evaluation process.  Defendant counters that the ALJ's

18 step two determination was supported by substantial evidence.

19    At step two of the sequential evaluation process, the ALJ must conclude whether Plaintiff

20 suffers from a "severe" impairment.  The regulations define a non-severe impairment as one that

21 does not significantly limit [the claimant's] physical and mental ability to do basic work

22 activities.  An impairment is not severe "if the evidence establishes a slight abnormality that has

23 'no more than a minimal effect on an individual's ability to work.'"  *Smolen v. Chater*, 80 F. 3d

24 1273, 1290 (9th Cir. 1996).  To satisfy step two's requirement of a severe impairment, the

25 claimant must prove the existence of a physical or mental impairment by providing medical

26 evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of

27 symptoms alone will not suffice.  20 C.F.R. §§ 404.1508; 416.908.  The effects of all symptoms

28 must be evaluated on the basis of a medically determinable impairment which can be shown to

1   be the cause of the symptoms.  20 C.F.R. §§ 404.1529, 416.929.  An overly stringent application

2   of the severity requirement violates the statute by denying benefits to claimants who do meet the

3   statutory definition of disabled.  *Corrao v. Shalala,* 20 F.3d 943, 949 (9th Cir. 1994).

4       The step two inquiry is a *de minimis* screening device to dispose of groundless or

5   frivolous claims.  *Bowen v. Yuckert,* 482 U.S. 137, 153-154 (1987).  Further, the ALJ must

6   consider the combined effect of all of the claimant's impairments on his ability to function,

7   without regard to whether each alone was sufficiently severe.  42 U.S.C. § 423(d)(2)(B).  The

8   combined effect "shall be considered throughout the disability determination process.  *Id*.  The

9   adjudicator's role at step two is further explained by *SSR* 85-28:

10          A determination that an impairment(s) is not severe requires a careful evaluation of the
            medical findings which describe the impairment(s) and an informed judgment about its
11          (their) limiting effects on the individual's physical and mental ability(ies) to perform basic
            work activities; thus, an assessment of function is inherent in the medical evaluation
12          process itself. At the second step of sequential evaluation, then, medical evidence alone is
            evaluated in order to assess the effects of the impairment(s) on ability to do basic work
13          activities.

14   *SSR* 85-28.

15       Here, the ALJ identified Plaintiff's DDD of the lumber and cervical spine, GERD, and

16   obesity as severe impairments.  AR 12.  However, the ALJ also determined that Plaintiff's hand

17   condition was non-severe.  AR 12.  He reasoned as follows:

18          There is no objective evidence relating to this alleged impairment.  The consultative
            physician who evaluated [Plaintiff] on January 17, 2007 noted that her hands had no
19          deformities or tenderness to palpation over the wrist or any of her fingers.  She appeared
            to have good hand grip strength.  She was taking only over the counter medication, and
20          the physician felt that this condition was stable and I agree.  As there is insufficient
            evidence to indicate that this condition has had more than a minimal impact on her ability
21          to perform work related activities for any continuous 12 month period, I therefore find
            that it is non-severe.

22

23   *Id*.

24       Plaintiff's argument that the ALJ erred in finding her hand impairment non-severe is

25   unpersuasive.  The ALJ cited the lack of objective medical evidence in making his finding. [5]

26

27   _____
     [5] The ALJ also relies on the fact that Plaintiff's hand condition was stable and that she was only taking over
     the counter medication.  The Court finds that these two reasons were not proper since Plaintiff was unable to take
28   prescribed medications due to her GERD.  Furthermore, the fact that a condition is stable does not render it non-
     severe.  However, the reliance on this rationale is harmless error because the ALJ's also cited the lack of objective

1    Indeed, Plaintiff did not complain of hand pain to examining physician Dr. Duclair, who made no

2    objective findings related to her hand impairment.  AR 131-133, 218-220.  On December 6,

3    2006, Dr. Duclair noted no atrophy and full range of motion in her extremities.  AR 132.  On

4    January 29, 2007, he counseled her about an EMG of the upper extremities to rule out true

5    radiculopathy and carpal tunnel syndrome, but she refused the EMG.  AR 131.  On June 1, 2007,

6    Plaintiff complained of numbness in her hand and fingers to examining physician Dr. Booth, but

7    the doctor found only "mild stocking glove numbness in the hands" and opined that her neck and

8    lumbar pain was "without significant radiation into her upper extremities."  AR 205-206.

9         Plaintiff cites treatment notes from her treating physician, Dr. Anderson, that

10   acknowledge "swollen, stiff, and painful" finger joints and reflect diagnoses of DJD and DDD.

11   AR 186, 266.  However, these findings do not appear to be based on any objective medical

12   evidence but were based on Plaintiff's subjective complaints. AR 15-16.  In Dr. Anderson's

13   "Complete Medical Report of Physical and Mental Work-related Impairments," he confirmed

14   diagnoses of DDD/DJD and arthritis, but based his opinion on epidurography, an x-ray of

15   Plaintiff's hips, MRIs of her cervical and lumbar spines, and a radiological examination of her

16   thoracic spine.  AR 200.  Although Dr. Anderson makes these diagnoses based on evaluations of

17   Plaintiff's hips and spine, he did not base his diagnosis regarding Plaintiff's hand condition

18   on any objective evidence.

19        Plaintiff also cites the evaluation completed by examining physician, Dr. Hernandez,

20   which diagnosed her with general osteoarthritis of the hands and imposed manipulative

21   limitations in reaching, handling, feeling, grasping, and fingering, especially in a repetitive

22   manner.  AR 14-15, 125-128.  However, as the ALJ pointed out, Dr. Hernandez's opinion is not

23   based on objective evidence.  He stated in his evaluation that there were "no specific injuries and

24   no surgeries to her hands," and his examination of her hands revealed good hand grip strength

25   and "no deformities, no tenderness to palpation over the wrist, or any other fingers."  AR 125-

26

27   medical evidence which was proper.  Harmless error applies in the Social Security context.  *See Burch v. Barnhart*,
     400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless" [citing
28   *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir.1990)]).

1    128.  He identified her arthritis as "clinically stable."  AR 128.  Thus, it appears that his

2    diagnosis and functional assessment were based solely on Plaintiff's subjective complaints.  In

3    addition, the mere diagnosis of an impairment is not sufficient to sustain a finding of disability.

4    *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985); *see also Matthews v. Shalala*, 10 F.3d 678,

5    680 (9th Cir. 1993) (mere existence of impairment is insufficient proof of disability).

6         Plaintiff further argues that she reported the severity of her hand impairment to the Social

7    Security Administration, her doctors, and to the ALJ at the hearing.  However, the ALJ did not

8    find Plaintiff's statements regarding her pain and other symptoms particularly convincing or

9    credible.  AR 17.  Plaintiff did not dispute this credibility finding.

10        In sum, the step-two finding by the ALJ that Plaintiff's hand impairment was non-severe

11   is supported by substantial evidence in the record and free of legal error.

12        **B.    *New Evidence***

13        Plaintiff argues that the Appeals Council should have remanded the case for the ALJ to

14   consider the May 30, 2008, Radiology Exam Report prepared by Dr. Rohn.  AR 208.  The

15   regulations explain Appeals Council review when new and material evidence is submitted:

16       If new and material evidence is submitted, the Appeals Council shall consider the
         additional evidence only where it relates to the period on or before the date of the
17       administrative law judge hearing decision. The Appeals Council shall evaluate the entire
         record including the new and material evidence submitted if it relates to the period on or
18       before the date of the administrative law judge hearing decision. It will then review the
         case if it finds that the administrative law judge's action, findings, or conclusion is
19       contrary to the weight of the evidence currently of record.

20    20 C.F.R. 404.970(b).

21        Here, the Appeals Council considered the additional evidence submitted by Plaintiff and

22   found no reason under the rules to review the ALJ's decision.  AR 1-4.  In addition, this Court

23   must consider evidence added to the record by the Appeals Council even where that evidence

24   was not before the ALJ.  *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).  Pursuant to the

25   provisions of 42 U.S.C. § 405 (g), as amended in 1980, a case may be remanded to the Secretary

26   if the new evidence submitted is material, and there is good cause for the failure to incorporate it

27   into the record.  In order to be "material," the new evidence must be probative of the claimant's

28   condition as it existed during the relevant time period -- on or before the administrative hearing.

16

1  *Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 511 (9th Cir. 1987).  In

2  addition, the claimant must prove to the reviewing court's satisfaction that there exists a

3  "reasonable possibility that the new evidence would have changed the outcome of the Secretary's

4  determination had it been before him."  *Booz v. Secretary of Health and Human Services*, 734

5  F.2d 1378, 1380 (9th Cir. 1984).  The good cause requirement is satisfied if the claimant could

6  not have obtained the medical evidence at the time of the administrative proceeding, even though

7  the evidence surfaces after the Secretary's final decision.  *See Embry v. Bowen*, 849 F.2d 418,

8  423-24 (9th Cir. 1988); *Booz*, *supra*, 734 F.2d at 1380.

9          In this case, the radiological examination by Dr. Rohn is inconclusive at best.  The

10  doctor's impression included the following:

11          1. Arthritic changes involving the findings which are though most suggestive of
            osteoarthritis.
12          2. Possible early symmetrical narrowing of the radiocarpal joints which could be
            associated with rheumatoid arthritis.  No other definite findings to suggest that diagnosis
13          are noted currently.

14  AR 208.  The doctor also found that "bony alignment appears normal, and the

15  metacarpophalangeal joints appear normal," and "the carpus in normal in alignment."  *Id*.  There

16  were "no definite bony erosions or abnormal soft tissue calcifications" noted.  *Id*.  This evidence

17  was insufficient to warrant a remand by the Appeals Council and likewise this Court finds it is

18  not material because there is little chance that the evidence would have changed the outcome of

19  the ALJ's determination.  Given the medical evidence in the record discussed previously, the

20  subsequent radiological report would not have more than a minimal effect on Plaintiff's ability to

21  work.  Thus, this Court has considered the new medical evidence presented to the Appeals

22  Council and declines to remand the case.

23          ***C.       Physician Opinion Evidence***

24          Plaintiff argues that the ALJ erred in rejecting the opinions of treating physician Dr.

25  Anderson and examining physician Dr. Hernandez regarding her functional limitations.

26                  ***1.       Dr. Anderson***

27          The opinions of treating doctors should be given more weight than the opinions of

28  doctors who do not treat the claimant.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998);

1 *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Where the treating doctor's opinion is not

2 contradicted by another doctor, it may be rejected only for "clear and convincing" reasons

3 supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830.  Even if the treating

4 doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without

5 providing "specific and legitimate reasons" supported by substantial evidence in the record.  *Id.*

6 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  This can be done by setting out

7 a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

8 interpretation thereof, and making findings.  *Magallanes  v. Bowen*, 881 F.2d 747, 751 (9th Cir.

9 1989).  The ALJ must do more than offer his conclusions.  He must set forth his own

10 interpretations and explain why they, rather than the doctors', are correct.  *Embrey v. Bowen*, 849

11 F.2d 418, 421-22 (9th Cir. 1988).  Therefore, a treating physician's opinion must be given

12 controlling weight if it is well-supported and not inconsistent with the other substantial evidence

13 in the record.  *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).

14      Here, Dr. Anderson, Plaintiff's treating physician, diagnosed Plaintiff with DDD/DJD

15 and arthritis, and opined that she could sit for one hour total in an eight hour work day and could

16 not stand or walk for any length of time.  AR 201.  He further opined that she could occasionally

17 use her hands for simple grasping and fine manipulation, occasionally handle, but never reach,

18 push, or pull.  AR 202.  This opinion is contradicted by Dr. Hernandez and Dr. Jackson, the state

19 agency examining physician.  Dr. Hernandez made a diagnosis of osteoarthritis but opined that

20 Plaintiff could stand and walk six hours, and sit six hours, in an eight hour work day.  AR 128.

21 Similarly, Dr. Jackson opined that Plaintiff could stand and/or walk for a total of about six hours,

22 and sit for a total of about six hours, in an eight-hour workday.  AR 190.  Thus, the ALJ must not

23 reject Dr. Anderson's opinion without providing "specific and legitimate reasons" supported by

24 substantial evidence in the record.  *Lester*, 81 F.3d at 830.  According to 20 C.F.R. §

25 404.1527(d)(3)-(6), factors the ALJ may consider in determining what weight to accord the

26 opinion of the treating physician include the supportablility of the opinion and consistency with

27 the record as a whole.

28      Here, the ALJ stated the following reasons for rejecting the doctor's opinion:

18

> . . . it is not supported by medically acceptable clinical and laboratory diagnostic techniques, is inconsistent with other significant evidence regarding [Plaintiff's] alleged back condition, and appears to have been based on subjective complaints rather than on objective findings.

AR 16. (Citations omitted).  Furthermore, as previously discussed, the ALJ noted that the objective tests on which Dr. Anderson bases his opinion do not support the limitations prescribed.  AR 16.  Specifically, Dr. Andersen diagnosed DJD and arthritis and imposed manipulative limitations, yet none of the radiological examination reports reveal evidence of any problems with Plaintiff's hands.  AR 16,138, 148-149, 155; *see also* AR 200.  In addition, orthopedic surgeon Dr. Booth reviewed the same radiological reports and found "advanced age-appropriate degeneration of the cervical and lumbar spine" and "no significant neurologic compression."  AR 16, 206.  Dr. Booth recommended a standard conservative treatment program.  AR 16, 206.  The ALJ also cited Plaintiff's own statements in the record.  She indicated to Dr. Hernandez that "walking, standing, and sitting are generally not a problem."  AR 126.  She also testified that she walks around outside during the day and can walk about 500 yards before she has to stop.  AR 39.  These constitute specific and legitimate reasons for rejecting the opinion of treating physician Dr. Anderson.  As such, the Court finds no error.

### 2.   *Dr. Hernandez*

An ALJ must provide "clear and convincing" reasons for rejecting the uncontroverted opinion of an examining physician.  *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995) (citations omitted).  The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *Id.* (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).

Here, Dr. Hernandez diagnosed osteoarthritis in Plaintiff's hands and opined that Plaintiff could be expected to sit for about six hours in an eight hour work day with routine breaks and stated that "[m]anipulative limitations are attributed to reaching, handling, feeling, grasping, and fingering due to arthritis of both hands, especially in a repetitive manner."  AR 128.  In rejecting these limitations, the ALJ stated:

1     I give appropriate weight to this opinion, but I do not adopt the limitations restricting
2     [Plaintiff] to six hours of sitting.  The evidence fails to support this limitation, and
    [Plaintiff] herself stated that sitting was not a problem.  I also do not adopt the limitations
3     with regard to reaching, handling, feeling, grasping, and fingering, as there is a lack of
    objective findings and longitudinal treatment history with regard to these limitations.

4 AR 15.

5        The ALJ pointed out that Dr. Hernandez proffered no medical evidence to support a

6 finding of arthritis in Plaintiff's hands or any manipulative limitations.  AR 125-128.  His

7 examination of her hands revealed no deformities, no tenderness to palpation over the wrist, or

8 any other fingers, and good hand grip strength.  AR 127.  In addition, the ALJ cited the lack of

9 treatment history regarding Plaintiff's hand impairment.  AR 15.  The record contains only three

10 treatment notes regarding Plaintiff's hands between August 2004 and the examination by Dr.

11 Hernandez.  AR 186, 171, 166.  He made no diagnoses that would affect Plaintiff's ability to sit,

12 and his review of the radiological reports consisted of a negative bilateral hip X-ray and a

13 thoracic spine MRI showing "mild thoracic scoliosis, diffuse degenerative changes, otherwise

14 unremarkable."  AR 125, 128.  In addition, as discussed previously, the sitting limitation is

15 directly contradicted by Plaintiff's statement to Dr. Hernandez that sitting was generally not a

16 problem.  AR 126.  Thus, the ALJ's rejection of Dr. Hernandez' limitations on sitting and use of

17 the hands was supported by substantial evidence in the record and free of legal error.

18        **D.**      ***Plaintiff's RFC and Questions Posed to the VE***

19        Plaintiff argues that the ALJ failed to properly assess her RFC and thus failed to properly

20 question the VE.

21        Residual functional capacity ("RFC") is an assessment of an individual's ability to do

22 sustained work-related physical and mental activities in a work setting on a regular and

23 continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule.  SSR 96-8p.

24 The RFC assessment considers only functional limitations and restrictions which result from an

25 individual's medically determinable impairment or combination of impairments.  SSR 96-8p.

26 "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record

27 including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain,

28

1    that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Social*

2    *Security Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

3          Here, the ALJ found that Plaintiff had

4          the residual functional capacity to perform sedentary work as defined in 20 CFR
          404.1567(a), with the ability to lift or carry up to ten pounds on an occasional and
5          frequent basis, stand or walk up to 6 hours in combination, and sit without limit.  She can
          occasionally bend, stoop, twist, squat, crawl and climb stairs, but should not climb
6          ladders or scaffolding.  She is limited to occasional overhead reaching.

7    AR 13.  Plaintiff argues that the manipulative limitations assessed by Drs. Anderson and

8    Hernandez were "conspicuously missing" from the RFC and should have been included.  On the

9    contrary, the ALJ articulated specific and legitimate reasons for rejecting the limitations assessed

10   by Drs. Anderson and Hernandez, as discussed above.

11         Plaintiff further argues that the limitations espoused by Drs. Anderson and Hernandez

12   should have been included in the hypotheticals posed to the VE.  "Hypothetical questions posed

13   to the vocational expert must set out all the limitations and restrictions of the particular claimant .

14   . . ." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988).  The testimony of a VE "is valuable

15   only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639,

16   644 (9th Cir. 1982).  The VE's opinion about a claimant's residual functional capacity has no

17   evidentiary value if the assumptions in the hypothetical are not supported by the record.  *Embrey*,

18   849 F.2d at 422.  An ALJ is only required to present the VE with those limitations he finds to be

19   credible and supported by the evidence.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir.

20   2001).  Here, the ALJ included all limitations and restrictions that were supported by the medical

21   record.  As discussed above, Plaintiff's manipulative limitations with regard to reaching,

22   handling, feeling, grasping, and fingering were found to be unsupported by the medical record,

23   and Plaintiff's subjective testimony regarding her manipulative limitations was found to be not

24   credible.  Thus, the ALJ did not err by excluding them from his hypothetical questions to the VE.

25         Plaintiff also argues that the ALJ was required to identify and resolve conflicts between

26   the occupational evidence provided by the VE and information in the Dictionary of Occupational

27   Titles (DOT).  Specifically, Plaintiff argues that a conflict exists between the ALJ's assignation

28

of a RFC limiting her to sedentary work while the VE stated that she can perform her past

relevant work as a teacher's aide, which is classified as light work in the DOT.

However, a person is not disabled if they are able to perform their past work.  20 CFR §

404.1502(f).  Social Security Ruling 82-61 provides that there are three possible tests for

determining whether or not a claimant retains the capacity to perform her past relevant work.[6]

One of the tests identifies that "where the evidence shows that a claimant retains the RFC to

perform the functional demands and job duties of a particular past relevant job as he or she

actually performed it, the claimant should be found to be 'not disabled.'" *SSR 82-61*.

Although not required at step four, the ALJ consulted a VE to assess whether Plaintiff

could perform her past work. *Crane v. Shalala*, 76 F. 3d 251, 255 (9th Cir. 1996).  In the present

case, the ALJ determined that Plaintiff had the capacity to perform her past relevant work as a

teacher's aide because it did not require the performance of work-related activities precluded by

her RFC.  AR 17.  The ALJ stated, "[i]n comparing [Plaintiff's] residual functional capacity with

the physical and mental demands of this work, I find that [Plaintiff] is able to perform it as

actually performed."  AR 18.  The record supports the ALJ's determination that plaintiff could

perform her past relevant work as a teacher's aide "as she actually performed it."  AR 18.

Plaintiff testified that she typically worked four hours per day, three to five days per week.  AR

34.  The work consisted of copying papers for teachers and working with the children "once in a

while."  AR 35.  In her Work History Report, Plaintiff indicated that the teacher's aide job

consisted of helping students with class work, making copies for teachers, and yard duty at

recess.  AR 93.  She further indicated that she walked only one hour per day, stood only one hour

per day, and sat only three hours per day.  *Id*.  She did not climb, stoop, kneel, crouch, crawl,

handle big objects, or reach.  *Id*.  Lifting and carrying she indicated did "not apply" and she never

---

[6]Social Security Rulings are interpretations by the Social Security Administration ("SSA") of the Act. While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law.  The Ninth Circuit has upheld the Secretary's interpretation of the Act embodies in SSR 82-40, which makes express what is implicit in SSR 82-61.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

1   lifted more than ten pounds. *Id.* Thus, according to Plaintiff's own description of her past work,

2   the work is within the RFC assigned by the ALJ.

3        A review of the record and the questioning of the VE demonstrates that the ALJ properly

4   resolved the conflict between the DOT and the VE's testimony by limiting the hypothetical and

5   examining Plaintiff's past work as it was actually performed. AR 40-43.  Therefore, the ALJ

6   followed SSR 82-61 and the Court rejects plaintiff's contention that the ALJ erred in this regard.

7                                    **CONCLUSION**

8        Based on the foregoing, the Court finds that the ALJ's decision is supported by

9   substantial evidence in the record as a whole and is based on proper legal standards.

10  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

11  Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in

12  favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff

13  Deanna M. Tweedy.

14       IT IS SO ORDERED.

15  **Dated:   August 25, 2010**          **/s/ Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28